UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEBORAH R. MURCHLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-242 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Deborah R. Murchland, on August 8, 2014. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Deborah R. Murchland, filed applications for Disability Insurance Benefits and Supplemental Security Income on August 20, 2012, alleging a disability onset date of August 14, 2012. (Tr. 20). The Disability Determination Bureau denied Murchland's applications on November 20, 2012, and upon reconsideration on February 4, 2013. (Tr. 20). Murchland subsequently filed a timely request for a hearing on March 27, 2013. (Tr. 20). A hearing was held on November 25, 2013, before Administrative Law Judge (ALJ) Maryann S. Bright, and the ALJ issued an unfavorable decision on January 28, 2014. (Tr. 20, 31). Vocational Expert (VE) Charles H. Mcbee, Deleen Harris, Murchland's sister, Burt Beiler, a friend of Murchland, and Murchland testified at the hearing. (Tr. 20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–16).

The ALJ found that Murchland met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 22). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Murchland had not engaged in substantial gainful activity since August 14, 2012, the alleged onset date. (Tr. 22). At step two, the ALJ determined that Murchland had the following severe impairments: insomnia, psychosis NOS, depression, anxiety, history of amphetamine use, asthma, myalgia, and thalassemia minor. (Tr. 22). At step three, the ALJ concluded that Murchland did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23).

In determining whether Murchland had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 12.04 for affective disorders, Listing 12.06 for anxiety disorders, Listing 12.08 for personality disorders, and Listing 12.09 for substance addiction disorders. (Tr. 23). Additionally, when considering the above Listings, the ALJ considered the Paragraph B criteria and the Paragraph C criteria. (Tr. 23–26). The ALJ indicated that an impairment satisfies Paragraph B when the mental impairment results in at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 23). Additionally, the ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 23). The ALJ determined that Murchland had a mild restriction in daily living activities. (Tr. 23).

The ALJ also concluded that Murchland had moderate difficulties in social functioning. (Tr. 24). Murchland reported that she had problems getting along with coworkers in the past, tended to stay in her room, and preferred to be alone. (Tr. 24). However, Bert Beiler, Murchland's boyfriend, reported that she had no problems getting along with people and that she could leave home alone. (Tr. 24). Murchland indicated that she had occasional hallucinations, which caused her to talk to people who were not present or to believe that her TV or phone were talking to her. (Tr. 24). She also claimed that she had sudden angry outbursts, and Beiler claimed that she sometimes yelled and screamed at him when nothing had happened. (Tr. 24). Deleen Harris, Murchland's sister, testified that Murchland's mental conditions had worsened, that Murchland had sudden outbursts, and that Murchland had trouble fitting in with others. (Tr. 24). Murchland reported that her psychotropic medication reduced her hallucinations and angry outbursts. (Tr. 24).

The ALJ also determined that Murchland did not have more than moderate difficulties in concentration, persistence, or pace. (Tr. 24). Murchland reported that she had a history of Attention Deficit Disorder and had taken Adderall for several years to help her focus. (Tr. 24). She claimed that she was easily distracted and would start many tasks without finishing anything, which Beiler confirmed. (Tr. 24). Dr. Bacchus, a consultative physical examiner, concluded that Murchland had trouble staying on task and following a conversation. (Tr. 24).

The consultative psychological examiner, Wayne Von Bargen, Ph.D., observed that Murchland's affect was labile and that she was somewhat distracted and nervous. (Tr. 24). However, he determined that her cognitive functioning was still grossly intact. (Tr. 24). Murchland recalled three out of four items after a lapse of several minutes, remembered five digits forward and four digits backwards, and performed mental arithmetic calculations correctly.

(Tr. 24). Dr. Von Bargen concluded that Murchland's global assessment of functioning (GAF) was 55, which the ALJ interpreted as no more than moderate difficulty with functioning. (Tr. 24).

The ALJ acknowledged that Murchland had a GAF of 50 in March 2012, which was triggered by stack stimulant abuse. (Tr. 25). However, she did not have hallucinations at that time and continued to work until August 2012. (Tr. 25). Murchland reported a June 2013 nervous breakdown that required hospitalization. (Tr. 25). She was discharged after three days and had a GAF of 51-60, which suggested moderate functional limitations. (Tr. 25). Murchland sought additional treatment on September 24, 2013 at the Bowen Center, where her GAF was 40. (Tr. 25). Since 2013, treatment notes indicated that Murchland's symptoms improved but that her GAF remained 40. (Tr. 25). However, the ALJ concluded that she would have no more than moderate difficulty in sustaining concentration, persistence, or pace within twelve months. (Tr. 25).

The ALJ found that Murchland did not experience any episodes of decompensation of extended duration since the alleged onset date. (Tr. 25). The ALJ concluded that the paragraph B criteria was not satisfied because Murchland's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation of extended duration. (Tr. 25). Additionally, she determined that Murchland did not satisfy the paragraph C criteria. (Tr. 25).

The ALJ then assessed Murchland's residual functional capacity as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for lifting, carrying, pushing and pulling up to 50 pounds occasionally and up to 25 pounds frequently; standing and/or walking (with normal breaks) for approximately 6 hours per 8 hour workday and sitting (with normal breaks) for approximately 6 hours per 8 hour

> workday; frequent climbing of ramps and stairs, occasional climbing ladders, ropes, or scaffolds; frequent balancing, stooping, crouching, kneeling, and crawling; she should avoid concentrated exposure to irritants such as fumes, odors, dust and gases; concentration exposure to poorly ventilated areas; and even moderate exposure to chemicals. She is unable to engage in complex or detailed tasks, but can perform simple, routine and repetitive tasks consistent with unskilled work; and she is able to sustain and attend to task throughout the workday. She is limited to superficial interaction with coworkers, supervisors, and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. Contact with supervisors still involves necessary instruction. She is best suited to working alone in semi-isolation from others or as a part of a small group. She is limited to work in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting. She is further precluded from fast-paced work such as assembly line production work with rigid or strict productivity requirements.

(Tr. 26). The ALJ explained that in considering Murchland's symptoms she followed a two-step process. (Tr. 26). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Murchland's pain or other symptoms. (Tr. 26). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Murchland's functioning. (Tr. 27). The ALJ concluded that Murchland's impairments could cause some of her alleged symptoms but that Murchland's statements about her symptoms' intensity, persistence, and limiting effects were not credible. (Tr. 27). When reviewing the credibility of Murchland's mental impairment symptoms, the ALJ noted that Dr. Von Bargen's findings suggested that she had some moderate but no marked difficultly with mental functioning. (Tr. 28).

At step four, the ALJ found that Murchland was unable to perform any past relevant work. (Tr. 29). Considering Murchland's age, education, work experience, and RFC, the ALJ

5

concluded that there were jobs in the national economy that Murchland could perform, including hand packager (2,500 jobs in Indiana and 150,000 jobs nationally), palletizer (1,500 jobs in Indiana and 90,000 jobs nationally), and shipping and receiving weigher (1,000 jobs in Indiana and 90,000 jobs nationally). (Tr. 30).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; *Pepper*, 712 F.3d at 361–62; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that

her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty.  *Givens v. Colvin*, 551 F. App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  An ALJ may give less weight to an examining source's opinion when it appears to rely heavily on the claimant's subjective complaints.  *Givens*, 551 F. App'x at 861; *see* **20 C.F.R. § 404.1527(c)(3)** ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion.  The better explanation a source provides for an opinion the more weight we will give that opinion."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Murchland has argued that the ALJ failed to evaluate Dr. Von Bargen's opinion properly.  Dr. Von Bargen opined that Murchland's "relationships with coworkers and supervisors may be stormy, and marked by drama and conflict."  (Tr. 485).  The VE claimed that an individual with stormy work relationships marked by drama and conflict could not perform any jobs.  (Tr. 102–103).  Murchland indicated that the ALJ mentioned Dr. Von Bargen's report, summarized the

mental status exam, and noted Dr. Von Bargen's GAF assessment. Additionally, the ALJ concluded that Dr. Von Bargen's findings suggested no more than a moderate difficulty with mental functioning. However, Murchland commented that the ALJ failed to specifically mention Dr. Von Bargen's finding that her work relationships may be stormy and marked by drama and conflict.

The Commissioner has argued that substantial evidence supports the ALJ's evaluation of Dr. Von Bargen's opinion. It noted that the ALJ reviewed Dr. Von Bargen's findings and opinion and that she identified his GAF assessment. Furthermore, the Commissioner argued that the ALJ's RFC accounted for Dr. Von Bargen's opinion by limiting Murchland to superficial interaction with coworkers, supervisors, and the public and to working alone in semi-isolation. Therefore, she claimed that the ALJ's RFC was consistent with Dr. Von Bargen's opinion.

Although the ALJ reviewed some of Dr. Von Bargen's conclusions, it is not clear whether she considered his social functioning limitation finding. The ALJ did not mention Dr. Von Bargen's finding that Murchland's work relationships may be stormy and marked by drama and conflict. The ALJ does not need to discuss every piece of evidence, but she cannot ignore evidence that undermines her ultimate conclusions. ***Moore v. Colvin***, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citation omitted). The VE testified that an employee with stormy work relationships marked by drama and conflict could not perform any jobs. Therefore, Dr. Von Bargen's social functioning opinion undermines the ALJ's ultimate conclusions and requires review.

By failing to review Dr. Von Bargen's social functioning limitation, the ALJ failed to build a logical bridge for the court to follow. Furthermore, the ALJ failed to indicate how much

9

weight she afforded Dr. Von Bargen's opinion. Therefore, the court cannot review whether the ALJ accepted or rejected Dr. Von Bargen's social functioning limitation. Although the Commissioner argued that the ALJ's RFC determination, which included social functioning limitations, accounted for Dr. Von Bargen's opinion, the VE testified that Dr. Von Bargen's limitation would have precluded all work. Therefore, the ALJ needed to discuss that evidence. *See Moore*, 743 F.3d at 1123. "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 12th day of August, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge